UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA, DIVISION

------------------------------------------------------------x

DWAYNE POUSSON, TIMOTHY CLARK,
and those others that are
similarly situated,

                                Plaintiffs,

vs.

DIRECTV, INC. and DIRECTV HOME
SERVICES, INC.,

                                Defendants.

Case No.: 10-CV-523

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO STAY THESE
PROCEEDINGS AND
COMPEL INDIVIDUAL
ARBITRATION**

------------------------------------------------------------x

### INTRODUCTION

On December 14, 2010, Plaintiffs Dwayne Pousson and Timothy Clark ("Plaintiffs") brought this action against their current and/or former employer, Defendant DIRECTV, INC. and DIRECTV HOME SERVICES, INC. ("DIRECTV" or collectively "Defendants"), as a putative collective action alleging violations of the Fair Labor Standards Act ("FLSA"). *See* Complaint, *Passim*. Plaintiffs are precluded from litigating these claims in this court because each entered into an identical Arbitration Agreement. Therein Plaintiffs individually agreed to arbitrate "any claims, controversy and/or dispute between" himself and DirecTV Home Services, LLC and any affiliates thereof, which include DIRECTV, INC. Affidavit of Peter Sutherland ("Sutherland Aff.") ¶¶ 3-4, 6; Ex. A ¶ 1,2 (hereinafter "Arbitration Agreements").[1] These Arbitration Agreements include all statutory claims and specifically FLSA

---

[1] The Court will note that Plaintiff Clark's Arbitration Agreement is identical to Plaintiff Pousson's. *Compare* Exhibit A with Exhibit B. On December 20, 2010, DIRECTV employee Charles Munson filed

1

claims. *Id*. Plaintiffs must arbitrate their FLSA disputes because DIRECTV unequivocally can establish the existence of a valid arbitration agreement that covers the instant dispute. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002).

The Arbitration Agreements also require Plaintiffs to arbitrate their respective FLSA claims individually – not as a class or collective action. Arbitration Agreements ¶ 5. The Eleventh Circuit has ruled that class and collective action waivers, such as the one here, are lawful. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Plaintiffs, therefore, are precluded from proceeding on a collective action basis, and must arbitrate their FLSA claims on an individual basis only.

Accordingly, DIRECTV requests that the Court issue an order staying this action and compelling each Plaintiff individually to arbitrate his FLSA claim on an individual basis in accordance with the terms of the Arbitration Agreement he signed.

## STATEMENT OF FACTS

### A. Plaintiffs' Claims Are Covered By Their Arbitration Agreements.

In August 2008 and September 2008, respectively, DIRECTV hired Plaintiffs Clark and Pousson. Complaint ¶¶ 5,7; *See* Sutherland Aff. ¶¶ 3-4. At the outset of their employment, Plaintiffs executed Arbitration Agreements with DIRECTV. *See* Sutherland Aff. ¶¶ 3,4; Exs. A and B.[2] Pursuant to these Arbitration Agreements, arbitration is the exclusive

---

a "Consent to Become a Party Plaintiff" in this action, pursuant to 29 U.S.C. § 216(b). Opt-in Plaintiff Munson, like named Plaintiffs Clark and Pousson, is party to the Arbitration Agreement. *See* Sutherland Aff. at Ex. C. Thus, this Motion applies with equal force to his claims. All subsequent references to "Plaintiffs" refer to both the named Plaintiffs and Mr. Munson.

[2] As noted above, while the Arbitration Agreements are between Plaintiffs and "DirecTV Home Services, LLC," they expressly include all affiliates of that entity, including entities "controlling" DIRECTV Home Services, LLC. Arbitration Agreements ¶ 1. Defendant DIRECTV, Inc. controls DIRECTV Home Services, LLC. Sutherland Aff. ¶ 6. Defendant DIRECTV Home Services, Inc. also was an affiliated entity of signatory DIRECTV Home Services, LLC. *Id*. ¶ 7. Thus, the Arbitration Agreements are

forum for resolving any disputes arising out of Plaintiffs' employment. *Id.* The Arbitration Agreements (which are identical) provide in relevant part:

> Except as it otherwise provides, **this Agreement requires all such disputes that have not otherwise been resolved to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial**. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability or validity of the Agreement or any portion of the Agreement. Issues arising out of or related to the enforceability or validity of this Agreement are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. **The Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the** Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, **Fair Labor Standards Act**, Employee Retirement Income Security Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims (excluding workers compensation, state disability insurance, unemployment insurance claims, and claims for benefits from DIRECTV Home Services, LLC-sponsored "employee benefits plan," as that term is defined in 29 U.S.C. § 1002(3)).

Arbitration Agreements ¶ 2 (emphasis added).

In their Complaint, Plaintiffs allege a single cause of action for violations of the FLSA's overtime provision. *See* Complaint ¶¶ 39-45. FLSA claims are expressly covered under the Arbitration Agreements. There simply can be no dispute that these claims Plaintiffs assert must be submitted to binding arbitration.

---

binding as between Plaintiffs and Defendants. Even absent this express language requiring arbitration between Plaintiffs and the Defendants as affiliate entities, arbitration would be required under general principles of construction applicable to arbitration agreements. *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999) (noting that non-signatories may be bound by arbitration agreements entered into by others under the theories of incorporation by reference, assumption, agency, veil-piercing, and estoppel).

### B. The Arbitration Agreements Preclude Class and Collective Action Claims.

Plaintiffs bring this case as a putative collective action. Complaint, *Passim*. The Arbitration Agreements, however, expressly preclude class or collective actions:

> In arbitration, the parties will have the right to conduct civil discovery and bring motions, as provided by the forum State's procedural rules. However, **there will be no right or authority for any dispute to be brought, heard, or arbitrated as a class or collective action, or in a representative or private attorney general capacity** on behalf of a class of persons or the general public....

Arbitration Agreements ¶ 5. (emphasis added).

Thus, Plaintiffs' FLSA claims must be arbitrated individually.

## ANALYSIS

### A. General Principles Governing Arbitration.

The "validity of an arbitration agreement is generally governed by the Federal Arbitration Act ("FAA")." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). The FAA states that arbitration contracts are presumptively "valid, irrevocable, and enforceable." 9 U.S.C.A. § 2. The U.S. Supreme Court has noted that the FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. at 24-25. Moreover, the FAA applies to agreements "involving commerce." 9 U.S.C. § 2. "A written provision in any ... contract ... involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The Arbitration Agreements at issue here expressly provide they are governed by the FAA.  *See* Arbitration Agreements ¶ 2.  Likewise, the Arbitration Agreements here unquestionably involve "commerce," as the Arbitration Agreements arose and were entered in the context of an employment relationship. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123-24 (2001), *cert. denied* 535 U.S. 1112 (2002) (finding mandatory arbitration provision of the FAA applicable to all contracts of employment except those involving transportation workers); *Circuit City Stores, Inc. v. Najd,* 294 F.3d 1104, 1107 (9th Cir. 2002) (same); *Perry v. Thomas,* 482 U.S. 483, 490 (1987).

Accordingly, based upon the Arbitration Agreements' clear language, there can be no question that the validity of the contracts here are governed by the FAA.

B.      **Both FAA and Florida Law Favor Arbitration.**

The FAA was enacted in 1925 to reverse the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991). *See Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 270 (1995) and *Circuit City Stores v. Adams,* 532 U.S. 105, 122-123 (2001) (describing the significant benefits of arbitrating claims in the employment context).

In *Allied-Bruce*, the U.S. Supreme Court held that Congress' basic purpose in enacting the FAA was to overcome judicial suspicion of arbitration agreements.  *See also Perry,* 482 U.S. at 490 (stating that the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause").  In light of this policy, the U.S. Supreme Court "has construed the FAA as establishing a liberal policy in favor of arbitration."  *See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002) *citing EEOC v. Waffle House, Inc.*, 534 U.S. 279

5

Case 3:10-cv-00523-MCR-EMT   Document 12   Filed 01/26/11   Page 6 of 15

(2002). *See also Harbert International, LLC v. Hercules Steel Co.*, 441 F.3d 905, 906 (11th Cir. 2006) (stating that the "FAA liberally endorses and encourages arbitration as an alternative to litigation."). When enforcing this liberal policy "[i]t is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *See Citibank, N.A. v. Stok & Assocs., P.A.*, 387 Fed. Appx. 921, 923 (11th Cir. 2010) *citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927 (1983).

Thus, the FAA not only placed arbitration agreements on equal footing with other contracts, but also established a federal policy in favor of arbitration. *See Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 90 (2000); *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984). The FAA permits private parties to "trade [] the procedures ... of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. at 31.

This "liberal federal policy favoring arbitration agreements" in effect creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the [FAA]." *Perry*, 482 U.S. at 489. The Supreme Court has warned against judicial rulings designed to erode FAA precedence "by indirection." *Circuit City Stores, Inc. v. Adams,* 532 U.S. at 122. Instead, it is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 22 (1983). In fact, courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute ... [;] doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960). In the instant case, it

6

cannot be said that the Arbitration Agreements are "susceptible" to an interpretation that they do not include FLSA claims.

To the extent the Court would apply Florida principles of law (which it should not), the result remains the same: Plaintiffs have entered into a binding agreement to arbitrate their claims. As a general principle, "Florida law favors arbitration." *See United Vacation Network, Inc. v. Tahiri*, 987 So. 2d 244, 246 (Fla. 2d DCA 2008). In determining whether parties agreed to arbitrate, Courts are required to analyze the parties' intent from the language in their agreement. *See id*. As under FAA jurisprudence, "All doubts regarding the scope of an arbitration agreement must be resolved **in favor of arbitration**." [3] *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006)(emphasis added); *see also Maguire v. King*, 917 So. 2d 263, 266 (Fla. 5th DCA 2005) ("... Florida public policy favors resolving disputes through arbitration when the parties have agreed to arbitrate."); *Regency Group v. McDaniels*, 647 So. 2d 192, 193 (Fla. 1st DCA 1994) (In Florida, the general rule is that "a court must decide whether a particular dispute is subject to an arbitration agreement, doubts about the scope of the agreement should be resolved in favor of arbitration.").

Here, based on the express language of the Arbitration Agreements, there is no doubt that the parties intended that "disputes regarding the employment relationship . . . and claims arising under the . . . Fair Labor Standards Act" be sent to binding arbitration. Arbitration Agreements ¶ 5. *See also Murphy*, 944 So. 2d at 1134 ("In Florida, a party to a contract is not

---

[3] Florida law regarding the presumption of arbitrability mirrors the FAA: "'[a]ny time a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Terminix Int'l Co., LP v. Ponzio*, 693 So. 2d 104, 108 (Fla. 5th DCA 1997) *citing AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1996)).

permitted to avoid the consequences of a contract freely entered into simply because . . . in retrospect, the bargain turns out to be disadvantageous.") (internal citation omitted).

Accordingly, this Court should resolve any doubts regarding the scope and enforceability of the Arbitration Agreements in favor of arbitration.

### C. **Pursuant to the Express Terms of the Arbitration Agreements and Recent Supreme Court Authority, Plaintiffs Must Proceed Individually with Their FLSA Claims.**

Section 4 of the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4. Similarly, Section 3 of the FAA authorizes courts to stay litigation until the arbitration has been conducted "in accordance with the terms of the [parties' arbitration] agreement...." 9 U.S.C. § 3. Accordingly, the "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Board of Trustees*, 489 U.S. 468, 479 (1989); *see Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 53-54 (1995) (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA).

Applying these principles to the facts of this case, Plaintiffs have executed Arbitration Agreements which expressly prohibit them from pursuing a class and/or collective action claim, and the Court should enforce them. *See* Arbitration Agreement ¶ 5.

#### 1. **Under the Supreme Court's Decision In *Stolt-Nielsen*, Class or Collective Arbitration Is Permitted Only Where The Parties' Agreement By Its Express Terms So Permit.**

On April 27, 2010, the United States Supreme Court decided *Stolt-Nielsen S. A. v. AnimalFeeds International Corp.,* 559 U.S. __, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). *Stolt-Nielsen* holds that when an arbitration agreement is governed by the FAA, as is the one at issue in the instant case, class wide arbitration is forbidden unless the arbitration agreement permits

such actions to proceed. Specifically, the Court ruled that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id*. at 1775 (emphasis in original). *Stolt-Nielsen* rejects reliance on perceived "public policy" to thwart enforcement of the parties' agreement.

Here, the parties' Arbitration Agreements not only fail to permit class or collective arbitrations, but expressly forbid them. *See* Arbitration Agreements ¶ 5 ("there will be no right or authority for any dispute to be brought, heard, or arbitrated as a class or collective action, or in a representative or private attorney general capacity").[4] Under *Stolt-Nielsen,* this language controls.

In *Stolt-Nielson* the Court decided "whether, imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act ...." 130 S.Ct. at 1764. The Court concluded it was not, ordering that an arbitral award compelling class arbitration be vacated and holding that it was improper to require class arbitration where parties to the agreement to arbitrate did not consent to that procedure.[5]

Over and over again the Court emphasized that the parties' agreement must govern the outcome of a motion to compel arbitration and that public policy arguments cannot trump that agreement. *See, e.g., id.* at 1767 ("... the task of an arbitrator is to interpret and enforce a contract, not to make public policy"); 1773 ("... [t]he FAA imposes certain rules of

---

[4] While a collective action brought under the FLSA pursuant to 29 U.S.C. § 216(b) is in some ways distinguishable from a traditional class action, courts agree that this type of representative action is a "type" of class action. *See, e.g. Osborne v. Prudential Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 110890 at * 7-8 (C.D. Cal. Oct. 14, 2010). Furthermore, as discussed *infra*, the principles set forth in *Stolt-Nielsen* have been applied to FLSA collective actions. *See* Section C(2).

[5] *Stolt-Nielsen* arose in the context of a petition to vacate an arbitration award. The Court concluded that the arbitration panel's decision to impose class arbitration exceeded its authority. This strengthens the impact of *Stolt- Nielsen,* as the grounds for vacatur of an arbitral award are more narrow than those applicable to an appeal of an adverse trial court decision, compared to Defendant's burden before the Court. *Stolt-Nielson,* 130 S.Ct. at 1768, n. 3 and accompanying text.

fundamental importance, including the basic precept that arbitration 'is a matter of consent not coercion"); 1773 ("we have said on numerous occasions that the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms'"); 1773-1774 ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties'"); 1774 ("Underscoring the consensual nature of private dispute resolution, we have held that parties are `generally free to structure their arbitration agreements as they see fit'"); and 1774-1775 ("It falls to courts and arbitrators to give effect to these contractual limitations and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties").

In focusing on the terms of the agreement itself, the Supreme Court expressly rejected an attempt to undermine fidelity to the words of the arbitration agreement:

> In this case, we must conclude that what the arbitration panel did was simply to impose its own view of sound policy regarding class arbitration.

*Id*. at 1767-1768. The arbitration panel ran afoul of its obligation to enforce the contract: "The conclusion is inescapable that the panel simply imposed its own conception of sound policy." *Id.* at 1769. Indeed, even the arbitration panel's few references to intent were unavailing because "none of these shows that the panel did anything other than impose its own policy preference." *Id.* at 1770.

Applying the central principle of faithfulness to the words of the agreement, the *Stolt-Nielsen* Court concluded that absent an agreement to authorize class arbitration, the parties cannot be compelled to submit their dispute to class arbitration. *Id*. at 1776. The Court recognized the inherent inconsistency between "bilateral arbitration" and class arbitration. In the former, "parties forgo the procedural rigor and appellate review of the courts in order to realize

the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Id*. at 1775. In contrast, the Court pointed out the vast differences between a class arbitration and a bilateral arbitration, concluding that these differences "are too great for arbitrators to presume, consistent with their limited powers under FAA, that the parties' near silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." Id. at 1776.

>Therefore, the two fundamental principles emerge from *Stolt-Nielsen:*
>
>- Parties cannot be compelled to class arbitration unless they have agreed to submit their disputes to class arbitration; and
>
>- State public policy will not trump the intentions of the parties as expressed in their agreement.

Indeed, *Stolt-Nielsen* went one step further in articulating these principals, ruling that even where an arbitration agreement is <u>silent</u> as to amenability to class or collective treatment (which the Arbitration Agreements at issue here are not), such silence does not manifest consent to class or collective arbitration.[6]  *Jock v. Sterling Jewelers, Inc.*, 725 F. Supp. 2d 444 (S.D.N.Y. 2010); *see also AT&T v. Pardun*, 09-cv-02275 (D. Colorado)(Order dated Aug. 30, 2010, vacating award and ordering "rehearing to determine the limited issue of whether the arbitration clause in the Agreement permits class arbitration under Rules 3 of the American Arbitration Association's Supplementary Rules for Class Arbitrations consistent with this opinion and *Stolt-Nielsen*"); *Bandler v. Charter One Bank*, No. 451-7-03, 2010 WL 3617115 (Vt. Super. Ct. Aug. 2, 2010)(vacating arbitrator's finding that class arbitration was permitted even though the parties' arbitration agreement was silent on class arbitration; *Mensch and Alta Colleges, Inc.*, AAA Case No. 11-516-00995-09 at 26-33 (July 16, 2010)(Arbitrator concluding that, based on *Stolt-*

---

[6] This issue is not before this Court, as the Arbitration Agreements in this case clearly and unequivocally preclude class or collective action arbitration.

*Nielson*, the agreement at issue was silent as to class arbitration and, thus, the parties had to honor that agreement and could only proceed in arbitration on an individualized basis).

Relying on these fundamental principles, and consistent with *Stolt-Nielsen,* the parties' Arbitration Agreements must be enforced <u>as written</u>, meaning the Court should compel each Plaintiff to arbitrate his own individual claim.[7]

### 2. The Parties' Arbitration Agreements Expressly Preclude Class and Collective Claims, and This Waiver Is Enforceable Under Eleventh Circuit and Federal Law

Even before *Stolt-Nielsen*, the Eleventh Circuit expressly endorsed the lawfulness arbitration agreements which waive class/collective actions. In 2008, observing that "courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA," the Eleventh Circuit affirmed a decision of a Georgia federal court enforcing an arbitration agreement requiring individual (not collective) arbitration of Plaintiffs' federal employment claims, including their FLSA claims. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2008).

The District Courts applying *Caley* uniformly compel <u>individual</u> arbitration of putative collective action FLSA claims where a class and/or collective action waiver is contained in an arbitration agreement. *See Delano v. MasTec, Inc.*, 2010 U.S. Dist. LEXIS 126793 (M.D. Fla. Nov. 15, 2010)(Whittemore, J); *Slawienski v. Nephron Pharm. Corp.*, 2010 U.S. Dist. LEXIS 130365 (N.D. Ga. Dec. 9, 2010). In *Delano*, two named FLSA plaintiffs signed an acknowledgment agreeing to submit employment-related claims to the employer-defendant's dispute resolution policy. *Id*. at * 3-5. The policy in question required binding arbitration of

---

[7] DIRECTV considers the class waiver clause a central aspect of the Arbitration Agreements and the primary focus of this Motion. DIRECTV has not agreed to class arbitration and does not seek to compel class arbitration in this case. Accordingly, any blue penciling of the Arbitration Agreements would be contrary to their express terms and intent.

FLSA claims, and contained a collective action waiver. *Id*. The Court, synthesizing *Stolt-Nielsen*, *Caley* and the relevant body of authority, enforced the parties' agreement to individually arbitrate the FLSA claims of the two individuals who signed the agreement.

These Eleventh Circuit decisions are wholly consistent with the general trend upholding arbitration agreements and collective action waivers in federal courts in other jurisdictions, both pre- and post- *Stolt-Nielsen*. *Brown v. Luxottica Retail N. Am., Inc.*, 2010 U.S. Dist. LEXIS 104642 (N.D. Ill. Sept. 29, 2010); *Reid v. SuperShuttle Int'l*, 2010 U.S. Dist. Lexis 26831 (E.D.N.Y. Mar. 22, 2010); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002); *Carter v. Countrywide Credit Indus., Inc*., 362 F.3d 294, 298 (5th Cir. 2004); *Johnson v. Carmax, Inc.*, 2010 U.S. Dist. LEXIS 70700 (E.D. Va. July 14, 2010).

In short, no basis exists for this Court to decline to enforce the Arbitration Agreements, as written, including their express collective action waiver.

### D. The Court Must Stay All Proceedings Pending Arbitration.

Upon showing "(a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement," which has been done as set forth above, the FAA provides for a stay of a suit. 9 U.S.C. § 3; *see also Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008); *Wagner v. Stratton Oakmont, Inc.* 83 F.3d 1046, 1048 (9th Cir. 1996). Specifically, Section 3 of the FAA (9 U.S.C. § 3) provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance

>with the terms of the agreement, providing the applicant for the
>stay is not in default in proceeding with such arbitration....

9 U.S.C. § 3. The stay is mandatory as to the issues covered by the Arbitration Agreements.

Here, it is undisputed that Plaintiffs' claims are covered by the terms of the Arbitration Agreements. Accordingly, this matter must be stayed pending completion of arbitration proceedings.[8]

## **CONCLUSION**

For all the foregoing reasons, DIRECTV respectfully requests an order staying these proceedings and compelling each Plaintiff individually to arbitrate his claim in accordance with the terms of his Arbitration Agreement.

DATED this 26th day of January, 2011.

>JACKSON LEWIS, LLP
>245 Riverside Avenue, Suite 450
>Jacksonville, Florida 32202
>Telephone:  (904) 638-2655
>Facsimile:  (904) 638-2656
>
>By: */s/ Benjamin D. Sharkey*
>Benjamin D. Sharkey
>Florida Bar No.  0389160
>sharkeyb@jacksonlewis.com
>B. Tyler White
>Florida Bar No. 0038213
>whitet@jacksonlewis.com
>
>Counsel for Defendants

---

[8] Defendants' instant motion addresses only the issue of the Arbitration Agreements, which, as set forth herein, are valid and binding agreements that Plaintiffs submit any FLSA claims against Defendants to individual arbitration.  Plaintiffs' individual and collective action claims in this Court are also subject to the "first filed rule," which provides that "when two parallel suits are proceeding in different courts, the court initially having jurisdiction should hear the case in order to conserve judicial resources and avoid conflicting rulings." *Autonation, Inc. v. Whitlock*, 276 F. Supp. 2d 1258, 1264 (S.D. Fla. 2003).  Here, earlier-filed FLSA actions against Defendants already are pending.  In the event the Court denies Defendants' motion to compel individual arbitration, Defendants reserve the right to move for dismissal or transfer based on this rule.

## CERTIFICATE OF SERVICE

  I hereby certify that I have this day electronically filed the aforementioned pleading with the Clerk of Court using the CM/ECF System which automatically sends email notification of such filings to the following attorneys of record:

Jeremiah Joseph Talbott
Law Offices of Jeremiah J. Talbott PA – Pensacola FL
245 E. Intendencia St.
Pensacola, FL 32502

This 26th day of January, 2011.

                 */s/ Benjamin D. Sharkey*

4821-6188-2376, v. 2